## In re BECK.

### Ex parte O'CONNELL.

(District Court, S. D. Iowa, E. D. February 9, 1899.)

### No. 706.

**1. BANKRUPTCY—ATTORNEYS' FEES IN VOLUNTARY CASES.**

Under Bankruptcy Act 1898, § 64, par. b, providing that "the debts to have priority and to be paid in full out of bankrupt estates shall be * * * one reasonable attorney's fee * * * to the bankrupt in voluntary cases as the court may allow," the allowance of such fee in a voluntary case, and its amount, rest in the discretion of the court.

**2. SAME.**

In a case of voluntary bankruptcy, an attorney's fee for legal services rendered to the bankrupt in preparing and filing the petition and schedule, and during the proceedings, is not entitled to priority of payment out of the estate, such services being for the benefit of the bankrupt himself, is a proceeding instituted by him for his own advantage; and a claim for such fee is only provable as a general debt against the estate. But an allowance may be made to the attorney of the bankrupt for services of such a nature, and rendered under such circumstances, as to constitute a special benefit to the estate generally, as where the same were necessary to preserve the estate pending the appointment of a trustee.

**3. SAME.**

In a case of voluntary bankruptcy, where the amount realized for creditors was about $200, and the amount of proved debts over $2,000, and it appeared that, before the appointment of the trustee, the bankrupt's attorney had made several trips to neighboring cities to attend to litigation in respect to pending attachments and attempted judgments against the bankrupt in the state courts, his services therein resulting in benefit to the estate, *held*, that $50 should be allowed to the attorney, and paid out of the estate, as compensation for such services and for his personal expenses connected therewith; his claim for fees for legal services rendered to the bankrupt before the filing of the petition in bankruptcy and after the appointment of the trustee being disallowed.

In Bankruptcy. On application for allowance for attorney's fees.

D. J. O'Connell, pro se.

WOOLSON, District Judge. This is a case of voluntary bankruptcy. So far as stated in the verified application for allowance of attorney's fees, the proceedings in bankruptcy herein have not been particularly different from such cases generally. Upon presentation by counsel for the bankrupt of his application for allowance of $150 to him as attorney for the bankrupt, I referred said application to La Monte Cowles, Esq., a referee in bankruptcy, for examination and report as to special facts in said order of reference enumerated. His report has been filed, as also statement of counsel for bankrupt, additional to his application. In substance, the referee reports the estate as not yet closed, a part (but comparatively of small value) of the property being yet unsold. The value of the estate (not exempt from execution) coming into the hands of the trustee was less than $500 exclusive of the real estate, covered by mortgages for its full value. The amount thus far realized by the trustee is about $200, which will not be greatly increased by sale of property yet unsold. The unsecured claims filed in the estate amount to somewhat more

than $2,000. The services of attorney for bankrupt, in and about the proceedings in bankruptcy, were about such as ordinarily attend a case of voluntary bankruptcy, where there are no special contests involved. No contests whatever seem to have been had in these proceedings. The attorney for the bankrupt, however, has, at the bankrupt's solicitation and before the appointment of the trustee, made several trips from Burlington to Mt. Pleasant and to Keokuk, to attend to litigation regarding attachment suits instituted in the state courts, and as to attempted judgments against the bankrupt. The attorney also states that his attorney fee, as claimed, includes services for the bankrupt up to and including his discharge. The referee reports that, in his judgment, a reasonable fee for the services by attorney for the bankrupt from the beginning of bankruptcy proceedings up to and including the discharge of the bankrupt is $100.

The payment for which application is herein made is claimed to be authorized by clause 3 of paragraph b of section 64 of the present bankruptcy statute. The heading of the section is, "Debts Which Have Priority." Paragraph b itemizes the order of payment (except as to taxes) of all debts which, having priority, are to be paid in full out of the bankrupt estate. The first item relates to cost of preserving estate after petition filed; the second, to filing fees in involuntary cases; while the third item relates to "the costs of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupts in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases as the court may allow." A fourth item relates to wages due workmen, servants, etc., earned within three months, etc.; and a fifth item relates to debts owing to any person to which the laws of the state or of the United States give priority.

The third item, above quoted, apparently provides for an attorney's fee to petitioning creditors, as well as to the bankrupt, in involuntary cases; while in voluntary cases there appears to be contemplated only a fee for the attorney for the bankrupt in cases where "the court may allow,"—that is, in the discretion of the court. There seems to be good reason for this distinction. The petitioning creditors, if successful in their attempt, reap no specially personal benefit from their efforts. The estate is to be distributed among all the allowed claims, and the petitioning creditors only receive their proportionate share of amounts distributed. Their efforts are therefore for the creditors generally, and the proper expense attending same may well be laid as an expense on the general estate, thus compelling each creditor to bear his proportionate share. The alleged bankrupt, resisting his alleged insolvency or bankruptcy, and contesting for the possession and control of his property and the right to dispose of it, is entitled to have assistance of counsel in his efforts. Unless he has already arranged with counsel therefor, he must largely rely on obtaining from his property compensation for counsel. If his property pass into the hands of a trustee by reason of

his being adjudicated a bankrupt, his counsel may have nothing available from which to make his fees; and it seems proper that the claim of the attorney for the bankrupt for services in resisting involuntary proceedings should be regarded and paid as a prior claim, and not be required to be filed as a general claim. If the alleged bankrupt shall pay money or transfer property to an attorney for services to be rendered in bankruptcy proceedings, the court may reexamine the transaction, and award any excess, above reasonable amount for such services, to the trustee for the benefit of the estate. Bankruptcy Act, § 60, par. d.

The reasons underlying the provision (clause 3, par. b, § 64) above referred to for attorneys for alleged bankrupts in involuntary proceedings have not the same force when applied to voluntary proceedings. In the involuntary cases there is generally a considerable amount of assets. Were it not so, there would be little inducement for placing the debtor in bankruptcy. The proceedings are begun with the intention of compelling application of the assets to payment of the debts. In voluntary cases, however, the instances are comparatively rare where the assets are sufficient to afford any considerable dividend on the claims. Thus far, under the present statute, in this district at least, the assets have usually brought substantially nothing towards payment of claims; and the inducement to the debtor to avail himself of the provisions of the statute with reference to voluntary bankruptcy is largely that, with his smallness of assets, he can wipe out a largeness of debts. Take the case now under consideration: The assets in the hands of the trustee will net not much above $200, to apply on allowed claims exceeding $2,000. Here would be little, if any, inducement for creditors to institute involuntary proceedings. However, as such inducement to creditors becomes less and less, the inducement to the insolvent to avail himself of voluntary proceedings increases accordingly. If, in the present case, the claim of counsel ($150) for attorney's fees were allowed, there would be left little over $50 for dividend purposes to creditors. Hence is apparent the different bases on which attorney's fees for services on behalf of the bankrupt are considered in cases of voluntary and of involuntary bankruptcy.

Under the former bankruptcy statute (section 28, Act 1867) legal services in preparing the petition and schedules, and for advice in relation thereto, were held not to be a claim payable in full as a privileged debt or one having priority. In re Hirschberg, 2 Ben. 466, Fed. Cas. No. 6,530; In re Evans, Fed. Cas. No. 4,552; In re Rosenfeld, Fed. Cas. No. 12,057. An attorney is a general creditor in respect to services rendered in the preparation of the petition and schedules, and consultation therefor, and must prove his debt in the usual form, and take his dividend in concurrence with the other creditors of the bankrupt. In re Jaycox, 7 N. B. R. 140, Fed. Cas. No. 7,239. In the same case it is further held that, in order to justify payment out of the bankrupt's estate for legal services rendered to the bankrupt after adjudication of bankruptcy, and up to approval of choice of assignee, "it must be clearly shown that the alleged services were properly and necessarily rendered, for the purpose of

benefiting or preserving the estate of the bankrupt, in the interest of the general creditors, and not in the interest of any creditor or class of creditors. It was the duty of the bankrupt to see that the property was preserved until the appointment of an assignee; and, if it was necessary that other persons should render similar services, and the petitioners actually rendered valuable service in respect to the bankrupt's property, and to the advantage of the general creditors, the extent and value and necessity of such services should be clearly established. In re Bigelow, Fed. Cas. No. 1,397."

To my mind, the distinction made in the decision just quoted is applicable to the clause now under consideration of the present act. In cases of voluntary bankruptcy, generally, the services of the attorney for the bankrupt, in counseling with the bankrupt and preparing and presenting his voluntary petition for adjudication, are in the interest of the bankrupt, and are not services on behalf of the creditors generally. So, after adjudication is had, his services, generally, are likewise for and in the interest of the bankrupt. It may be presumed that, if services are required for the trustee, he will—generally with the approval of the referee—employ counsel. If, meanwhile, legal services are actually needed for preservation of the property, pending the appointment of the trustee, and such necessity clearly appears, and, as well, that such services were rendered which were beneficial to the general creditors,—that is, to the estate of the bankrupt,—this court is authorized to allow a reasonable fee therefor. In other words, fees for legal services rendered for bankrupt in instituting and during proceedings in voluntary bankruptcy, being services for the benefit of the bankrupt, in proceedings instituted by the bankrupt for his own benefit, will not be allowed as a debt having the priority given under the clause under consideration. Such fee, if allowable at all, must be presented as a claim against the estate, and take its place with other general claims. But, if legal services are rendered under circumstances and of a nature which constitute a special benefit to the estate generally, as in case where same were necessary to preserve the property pending appointment, etc., of trustee, the court may allow therefor, when such necessity and benefit clearly appear. It will be understood I am attempting to state the general proposition, and do not undertake to decide that no exceptions thereto can exist. The case in hand requires but the general statement above made.

The correctness of the conclusion thus reached is clearly apparent when the general policy of the present bankruptcy statute as to fees and costs is considered. One of the strongest objections urged against the bankruptcy statute of 1867 was what was claimed by many to be the excessive fees possible thereunder, in whose payment the estate was largely consumed, leaving to the creditors little, if any, desirable dividends. The present statute localizes the expense of the proceedings, in substituting in place of the general assignee (under former act), who was frequently situated remote from the estate of the bankrupt, a referee, who is generally of the county of the bankrupt, or situated conveniently thereto. Thus, witness fees, expense of personal attendance of the bankrupt, and

the like, are thereby practically minimized. Whatever contests arise in the proceedings, save when carried in review to the judge, are held practically at the home of the bankrupt. To those familiar with proceedings under the statute of 1867, the great saving of costs and expense thereby secured is at once apparent. Again, save as per cent. on assets may increase fees, the fees to referees and trustees for services in each estate are fixed at $10 and $5, respectively, and to the clerk of the court $10, which several amounts are, by general order 25, ordered by the supreme court to be in full for all services performed by them in such estate. It would scarcely seem possible that, in the clause under consideration from section 64, congress could have contemplated, nor under said general order could the supreme court have intended, that the attorney for the bankrupt in voluntary proceedings, with no features or services therein specially distinguishing such cases from voluntary cases generally, should be paid for his services to the bankrupt in such estate 10 times the amount paid to the clerk or referee, and 20 times the amount paid to the trustee, such payment thereby to lessen or destroy the dividend-paying ability of the estate. And in the present case the referee reports $100 as a reasonable fee for the legal services rendered (as itemized in the statement made by the attorney), while the attorney claims $150 as such reasonable fee.

The conclusion reached is that the bill as rendered cannot be allowed; and yet there clearly appear legal services of benefit to the estate as rendered by such attorney, and personal expenses by him necessarily incurred in connection therewith, pending appointment, etc., of trustee, and after petition for adjudication was filed. For services or disbursements before such filing, and after appointment of trustee (which necessarily include services that may hereafter by said attorney be performed), no allowance is made. I am of the opinion that services, of the kind above stated to be allowable, were performed by Mr. O'Connell, as attorney for the bankrupt, in regard to litigation in progress against the bankrupt in Henry and Des Moines counties, which, with his personal expenses incident thereto, amount to the sum of $50. Let an order be entered in his favor for payment to him by the trustee, out of the estate in his hands, of the amount of $50.