**In re DOCTORS, INC. d/b/a Doctors Hospital, Bankrupt.**

**Bankruptcy No. 76–1494EG.**

United States Bankruptcy Court, E. D. Pennsylvania.

May 29, 1980.

Adelman & Lavine, Philadelphia, Pa., Marvin Krasny, Philadelphia, Pa., for Trustee.

White & Williams, Philadelphia, Pa., Robert A. Kargen, Philadelphia, Pa., special counsel for Trustee.

Rawle & Henderson, Philadelphia, Pa., Peter C. Paul, Philadelphia, Pa., for Central Penn Nat. Bank, Trustee (Objecting creditor).

Samuel M. Brodsky, Philadelphia, Pa., Trustee.

John F. Gough, Philadelphia, Pa., Special Counsel for Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

Before the court are two applications for allowances,—one by special counsel for the trustee (seeking legal fees of $20,000.00), the other by the trustee (asking for commissions of $9,762.83). Central Penn National Bank, a trustee under an Indenture of Trust, has filed objections to both applications, contending that they are excessive. We will deny the objections and allow the applications in the requested amounts.

*Application of White & Williams, Esqs., for counsel fees.*

Although the trustee in this case was represented by able counsel, who were specialists in the practice of bankruptcy law, both the trustee and his bankruptcy counsel felt that, in connection with the estate's $100,000.00 claim against Blue Cross of Philadelphia, it would be in the estate's best interest to engage the services of White & Williams, Esqs., the law firm which had been the pre-petition counsel for the bankrupt in the litigation involving the $100,-000.00.

It took some importuning, both by the trustee and by the court, to persuade White & Williams to agree to represent the trustee. But it finally did and, on January 27, 1977, we entered an order approving its retention as special counsel to endeavor to recover the bankrupt's $100,000.00, which had been posted as indemnity in an action brought by Blue Cross in the Court of Common Pleas of Philadelphia County against the bankrupt to recover approximately

$225,000.00 which had been paid by Blue Cross to the bankrupt for subscriber care. The order provided, in part, that

> 9(a). The employment of said law firm to be upon general retainer and said firm to be reimbursed on a fee based upon time and effort at normal hourly rates or a percentage of the recovery from Blue Cross, which ever is greater, upon application to this court, after hearing on notice to creditors and parties in interest.

While the above clause is hardly a model of clarity, we think that, basically, the issue to be determined by us is the reasonableness of the requested allowance.

■ In determining the reasonable value of services rendered by the trustee's special counsel we are required to consider the following elements: (1) the time spent, (2) the intricacy of the problems involved, (3) the amount involved, (4) the opposition encountered, and (5) the results achieved. All of these, of course, subject to the economical spirit of the Bankruptcy Act: *In re Owl Drug Company* (D.C.Nev.), 16 F.Supp. 139, aff'd sub nom. *Cohn v. Edler* (C.A.9, 1937) 90 F.2d 823.

■ The time spent by the applicants totalled 79.1 hours, of which 8.5 hours was by partners, 67.9 hours was by associates and 2.7 hours was by paralegals and others. John Gough, Esq., of White & Williams, who was the partner who handled the case, stated that "the nature of this dispute was highly sophisticated and highly complicated,"[1] and detailed the intricate nature of the litigation. He explained that, not only was he able to effect collection of the entire principal sought ($100,000.00), but he was able to collect $30,215.85 in interest,—a commendable result. While this result was achieved without litigation, we are convinced that it was accomplished because of John Gough's intimate knowledge of the facts and the law involved in the case.

Since the order authorizing the employment of White & Williams provided that its compensation should be predicated either "on a fee based upon time and effort at

---

1. See n.t. p. 89

normal hourly rates or a percentage of the recovery from Blue Cross, whichever is greater," and since it is instantly apparent that the requested fee is based, not on hourly rates but on "a percentage of the recovery," the only issue confronting us is the reasonableness of the amount sought.

The fee of $20,000.00 sought by the applicants being only 15.3591% of the amount recovered, we have no difficulty in concluding that the request is a reasonable one. The result achieved by the applicants was outstanding and we give that factor great determinative weight. As the court said in *In re Hoffman* (D.C.Wis., 1909) 173 F. 234, "Success is the test applied by the business world in measuring compensation. It is largely so in the courts. As a rule, professional services, however, able or prolonged, which yield no results, command no high reward." This implies that, with due consideration to the economical spirit of the Bankruptcy Act, great success and benefit to the estate commands a liberal compensation: *Randolph v. Scruggs*, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165. We think the legal services performed by White and Williams in the case at bench merit the requested allowance of $20,000.00.

### Application of Samuel M. Brodsky, Esq., for trustee's commissions.

Samuel M. Brodsky, the trustee, has been a member of the bar for 51 years and, as such, was well qualified to cope with the many practical problems that were attendant on the closing of the bankrupt,—a hospital. Moneys totalling $934,783.27 having come into his possession for disbursement, he seeks the maximum commissions allowable to him under § 48c(1) of the Bankruptcy Act.

■ When he was called to testify at the hearing to consider his application for commissions and the objections thereto, the trustee stated that he had expended "a minimum of 200 hours"[2] in performing his services as fiduciary in this case. Counsel for the objecting creditor sought to have this testimony stricken on the ground that "It's an estimate, a speculation of some kind."[3] The hallmark case on the issue of fees in bankruptcy cases in this circuit is *In the Matter of Meade Land & Development Co., Inc.* (C.A.3, 1975) 527 F.2d 280. While there concerned directly with the allowance of counsel fees (as distinguished with commissions to be paid to a fiduciary) the court considered situations in which a record of time spent was not available. "When the Bankruptcy Judge finds that good cause exists for the nonproduction of the records, he may then rely on some alternative form of proof along with his articulated knowledge of the matter." *Meade* at p. 283–4. There was no duty on the trustee to keep an accurate record of the hours he spent in performing his duties as fiduciary, and his estimate of his time spent has probative value in determining the commissions to be awarded to him.

■ The trustee then proceeded to testify in detail regarding his services,[4] setting forth the "minimum of 200 hours spent by (him) on this case."[5] Accepting, as we do, the trustee's statement that he expended at least 200 hours in the performance of his duties as fiduciary, and it appearing that said duties were properly the functions of a trustee, we conclude that the trustee's commissions, calculated at less than $50.00 per hour, are fair and reasonable. While economy is an important principle influencing all allowances in bankruptcy proceedings, economy is by no means synonymous with parsimony and should not exclude such adequate compensation as is fair and reasonable: *In re Colonial Distributing Co.* (D.S.C., 1970) 314 F.Supp. 418.

---

2. See n.t. pp. 105–106

3. See n.t. p. 105

4. See n.t. pp. 106–120

5. Id. at p. 106