## WEIL et al. v. NEARY.

Circuit Court of Appeals, Second Circuit. December 12, 1927.

No. 61.

**1. Bankruptcy ⊕463—On striking bill of exceptions on review of judgment confirming referee's report, appellate court may examine complaint, answer, findings, and judgment.**

Where bill of exceptions on review of judgment confirming referee's report was stricken out, case is for review on judgment roll only, and appellate court is at liberty to examine complaint, answer, findings below, and judgment entered thereon.

**2. Appeal and error ⊕850(2)—Without stipulation waiving jury, rulings on law or findings of fact are not reviewable, in case tried without jury (28 USCA §§ 773, 875).**

Under Rev. St. § 700 (28 USCA § 875 [Comp. St. § 1668]), there is no right to review on rulings of law by court or of findings of fact, where case was tried without a jury, with no stipulation waiving a jury in accordance with Rev. St. § 649 (28 USCA § 773 [Comp. St. § 1587]).

**3. Bankruptcy ⊕482(1)—Allowances to attorneys for trustees is for court's discretion.**

Allowances to attorneys for trustees in bankruptcy is a matter for court's determina-

tion, and it alone has power to fix compensation, and to order its payment out of assets in possession of trustees.

**4. Contracts ⊜108(1)—Agreement opposed to public policy is void, even though intent was good and no injury resulted.**

Whether agreement is opposed to public policy is to be determined by its tendency, and agreement is void, if opposed to interest of public, even though in a particular case intent of parties may have been good, and no injury to public resulted.

**5. Contracts ⊜141(1)—Person asserting contract illegal, as against public policy, has burden of establishing it.**

Burden of establishing an agreement to be illegal, as against public policy, rests on person asserting it.

**6. Contracts ⊜108(1)—Contract will be declared void, as against public policy, only when case is free from doubt and injury to public is substantial.**

The court will declare a contract void, as against public policy, only when case is clear and free from doubt and injury to public is substantial, not theoretical and problematical.

**7. Attorney and client ⊜151—Bankruptcy ⊜482(1)—Agreement by attorneys for trustee to divide compensation with attorney for creditors assisting them held not void (Bankruptcy Rules, Eastern District of Pennsylvania, rule 5).**

Agreement whereby attorneys for trustee in bankruptcy were to divide fees with counsel representing creditors and having a complete knowledge of assets *held* not void, as contrary to public policy, or in violation of rule 5 of the Rules of Bankruptcy for the District Court for the Eastern District of Pennsylvania; no allowance having been made directly by the court to such attorney.

**8. Bankruptcy ⊜272—Trustee's employment of party's attorney is improper only when trustee is actively adverse to one of parties.**

Though generally trustee should not employ an attorney for either party to the suit for which he is appointed, it is only where trustee actively is adverse that there is any impropriety in employing as counsel one who bore such relationship.

**9. Attorney and client ⊜151—Attorneys may agree to division of compensation (Penal Law N. Y. § 274, subd. 2).**

Under Penal Law N. Y. § 274, subd. 2 (Consol. Laws, c. 40), attorneys and counsel have authority to contract for division of compensation received.

**10. Attorney and client ⊜151—Agreement for division of attorney's fees held not so vague and indefinite as to prevent enforcing equitable division.**

Agreement for division of attorney's fees in accordance with determination by one of parties on a fair and equitable basis *held* not so vague and indefinite as to be unenforceable, since judgment of such attorney was to prevail, but could not be arbitrary or capricious.

In Error to the District Court of the United States for the Southern District of New York.

Action by Edward M. Neary against A. Leo Weil and another, doing business under the firm name and style of Weil & Thorp. Judgment for plaintiff, and defendants bring error. Affirmed.

Stein & Salant, of New York City (George W. Wickersham and John G. Milburn, Jr., both of New York City, of counsel), for plaintiffs in error.

Louis Marshall, of New York City, for defendant in error.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. Josiah V. Thompson, a resident of Uniontown, Pa., engaged in business as a banker and operator of coal mines, became financially involved in 1915. His properties were mortgaged for $19,000,000 and he owed unsecured creditors $15,000,000. Samuel Untermyer, an attorney of New York City, was consulted to advise Mr. Thompson in his difficulties. Proceedings were taken in the Pennsylvania state courts, resulting in the appointment of equity receivers. The appointment of such receivers was revoked by a decision of the Supreme Court of that state (Hogsett et al. v. Thompson et al., 258 Pa. 85, 101 A. 941), and they were discharged and the suit dismissed in 1917. To prevent foreclosure of the mortgages, a petition in bankruptcy was filed, resulting in an adjudication on September 10, 1917.

The plaintiffs in error, attorneys at law of Pittsburgh, Pa., were retained by Mr. Untermyer to conduct the bankruptcy proceedings. This retainer was found below to be an agreement to pay them $5,000 for their services. At the time the defendants below had no interest in nor had they any connection with Thompson or his estate or his creditors. It was found below that Mr. Untermyer was the person most conversant with the affairs of the bankrupt, and represented creditors whose interests were identical with those of the general creditors. The trustees in bankruptcy retained the defendants below, by order of the court, and large allowances were subsequently made to them for their services.

In this action, the plaintiff below seeks to recover 40 per cent. of such allowances. It was found below that the affairs of the estate were very complicated. It was found that the

trustees in bankruptcy, "in selecting the defendants as their counsel, realized that they were selecting for that position counsel of the committee of creditors, who were represented by plaintiff's assignor and knew of defendant's connection with plaintiff's assignor in relation to such creditors." Further, that it was recognized that the original retainer of the defendants below on a basis of $5,000 was wholly inadequate for the services necessary, and in lieu of the compensation thus originally stipulated "it was mutually agreed that plaintiff's assignor and defendants should collaborate in rendering such services as were necessary and proper in such bankruptcy proceedings for the conservation of the estate and the protection of the creditors of the bankrupt, and that the defendants were to receive for the services so to be rendered by them in the bankruptcy proceedings, out of such allowances as should eventually be made by the court in payment therefor, such sum as plaintiff's assignor should consider just and equitable, the remainder of the amount so allowed to be paid to him." It was further found that, under the general supervision and with the active aid, assistance, and collaboration of the assignor of the plaintiff below and his firm, who acted for him, services were rendered, resulting in the conservation of the assets of the bankrupt for the benefit of his creditors and the realization of large sums therefor by the trustees in bankruptcy upon the sale thereof, for which allowances were made in bankruptcy proceedings to an aggregate amount received by the defendants below of $142,659.98, and, further, "a substantial part of the services for which said allowances were made having been performed by plaintiff's assignor, and by Guggenheimer, Untermyer & Marshall, acting for him." It was also found that, pursuant to the agreement to determine the division of the allowances made, the assignor of the plaintiffs below determined that the defendants below should retain 60 per cent. and pay 40 per cent. to him. Notice of such determination was served upon the defendants below.

The claim was assigned by Mr. Untermyer to the present plaintiff. After issue was joined, the matter was referred to a referee "to hear, try, and determine the issues, and with all the powers to act and rule upon the said trial possessed by the court," and he reported in favor of the plaintiff below, which was confirmed by the court below, and from a judgment entered thereon this writ of error has been allowed.

[1, 2] No bill of exceptions was filed, and the case is here for review on the judgment roll only. David Lupton & Sons v. Automobile Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699; Demotte v. Whybrow (C. C. A.) 263 F. 366; Steger v. Orth (C. C. A.) 258 F. 619. On motion, the bill of exceptions was stricken out because it was not served in time, but the application to dismiss the writ was denied. The application to dismiss is now renewed, and is denied. On this review we are at liberty to examine the complaint, answer, findings below, and the judgment entered thereon. No stipulation was signed waiving a jury, as provided by section 649 of the Revised Statutes (28 USCA § 773 [Comp. St. § 1587]). Therefore, by virtue of section 700 of the Revised Statutes (28 USCA § 875 [Comp. St. § 1668]), the defendant below is not accorded a right to review the rulings on the law of the court, during the progress of the trial of the cause. Nor are the findings of fact a subject for our review. Fleischmann Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; Duignan v. United States, 274 U. S. 195, 47 S. Ct. 566, 71 L. Ed. 996; Law v. United States, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401. In the Duignan Case, supra, in referring to sections 649 and 700 of the Revised Statutes, the court, referring to section 649, said:

"Its purpose and effect, when read together with sections 648 and 700 [28 USCA §§ 770, 875 (Comp. St. §§ 1584, 1668)], is to define the scope of appellate review in actions at law without a jury. Unless there is a written stipulation waiving a jury, there can be no review of the rulings on questions of law in the course of the trial or of the sufficiency of a special finding to support the judgment."

The findings of fact sufficiently support the cause of action pleaded. But it is argued that the complaint, as a matter of law, fails to establish a cause of action. The complaint alleges the agreement as found by the court below and as set forth above; also that the services of the defendants below were to be rendered under the direction of the assignor of the plaintiff below. At the time of the appointment of the defendants below as attorneys for the trustees, rule 5 of the Rules of Bankruptcy for the District Court for the Eastern District of Pennsylvania, where the bankruptcy proceedings were pending, was in force and effect. It reads:

"*Attorney for the Estate and His Duties.* Unless especially authorized by the court, re-

ceivers and trustees in bankruptcy shall not retain as their attorney the attorney of the bankrupt, of the petitioning creditor, of the person applying for the appointment of a receiver, or of any creditor, and trustees shall not retain as their attorney any attorney who has obtained proxies or voted upon the election of such trustees or who is the attorney for persons holding such proxy."

The argument is that the contract between the parties is against public policy, and is illegal and void. This is based upon the claim that it violated the rule referred to; also that it subjected the attorneys for the trustee to the supervision of the assignor of the plaintiff below, who was neither trustee nor attorney to the trustee, and entitled him to compensation allowed by the court for legal services to the trustee in such amount as he may deem just and equitable, which, it is said, was contrary to public policy. It is urged upon us that we must therefore examine the agreement with the closest scrutiny, because it violates the court's control and supervision over the services of attorneys and trustees.

[3, 4] Allowances to attorneys for trustees is a matter for the court's determination, and it alone has power to fix the compensation, and to order its payment out of assets in possession of the trustees. Whether an agreement is opposed to the interest of public policy is to be determined by its tendency. If it is opposed to the interest of the public, the agreement is void, even though in a particular case the intent of the parties may have been good, and no injury to the public has resulted. Woodstock Iron Co. v. Richmond, etc., Extension Co., 129 U. S. 643, 9 S. Ct. 402, 32 L. Ed. 819; Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 25 L. Ed. 532; Sampliner v. Motion Picture Patents Co. (C. C. A.) 255 F. 242.

The attitude of the courts toward compensation of attorneys, receivers, and trustees of a bankrupt estate may be inferred from rule 42 of the Supreme Court Rules effective April 13, 1925, subsequent to this allowance. That rule requires attorneys, receivers, and trustees, seeking an allowance of compensation from a bankrupt estate for the services rendered, to file a petition under oath setting forth, not only the statement of services and the amount claimed therefor, but it shall be accompanied by an affidavit of the applicant stating that no agreement has been made, directly or indirectly, and no understanding exists, for a division of fees between the applicant and the receivers, the trustees in bankruptcy, or the attorney of any of them, and, in the absence of such petition and affidavit, no allowance of compensation shall be made.

[5-7] But the burden of establishing an agreement to be illegal or against public policy rests upon the person asserting it, and the court will only declare a contract void as against public policy, when the case is clear and free from doubt, and an injury to the public is substantial, not theoretical and problematical. Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940; Oregon R. R. & Navigation Co. v. Dumas (C. C. A.) 181 F. 781; Richards v. Wiener Co., 207 N. Y. 59, 100 N. E. 592; Curtis v. Gokey, 68 N. Y. 300. It is apparent that the parties to this agreement, as found, in retaining the services of the assignor of the plaintiff below, had in mind subserving the interests of the creditors. It was to be expected that Mr. Untermyer, representing 95 per cent. of the unsecured creditors and having been in the litigation from the outset as advisor to the bankrupt, could render substantial services on behalf of the creditors, and would be useful to conserving the assets out of which dividends might be paid to them. It was he who retained the defendants below. The defendants below represented no creditors or creditors' committees. They were free to accept assignment as attorneys for the trustee and to represent them. It was not unlawful for them to retain Mr. Untermyer as counsel, and thus to obtain competent help in the common effort to bring to the trustees the assets of the estate. In re Champion Wagon Co. (D. C.) 193 F. 1004; In re Baber (D. C.) 119 F. 520; In re Abram (D. C.) 103 F. 272; In re Stotts (D. C.) 93 F. 438.

[8] Such an agreement is not contrary to public policy. The purpose of rule 5 and of the rule of the Supreme Court was not to prevent such employment. It was designed to avoid attorneys actively searching for professional employment in bankruptcy proceedings at their inception and later obtaining their assignment as attorneys for trustees. It was an abuse which sprang from such professional conduct which gave rise to the rule. At no time was an allowance made by the court to Mr. Untermyer, who came within the provisions of rule 5, if he applied to the court for compensation. As stated, the finding below is that the defendants below realized that, when they were agreeing with Mr. Untermyer for his services, they were consulting counsel for the committee of creditors and knew of his connection in relation to such creditors. His services were accept-

ed; no objection was made to them when tendered. While it is the general rule that a receiver should not employ an attorney for either party to the suit in which he is appointed, and the same rule applies to trustees, it is only where the trustee is actively adverse to one of the parties that there is any impropriety in employing as counsel one who bore such relationship. In re Smith (C. C. A.) 203 F. 369.

[9] At no time did Mr. Untermyer seek compensation from the bankrupt's estate for services rendered, and thus come within rule 5 of the General Orders of Bankruptcy promulgated by the Supreme Court. The defendants below having accepted the co-operation and collaboration of Mr. Untermyer, they had it within their right to pay therefor, and to pay out of the compensation allowed to them for the services rendered to the trustees in the course of the administration of the bankrupt's estate. There is no valid objection to attorneys sharing their fees with counsel employed. We must accept the finding establishing the agreement, and therefore the promise to pay. Indeed, by statute the right of attorneys and counselors to divide compensation received by them is recognized. Subdivision 2 of section 274 of the New York Penal Law (Consol. Laws, c. 40); Matter of Fitzsimons, 174 N. Y. 15, 66 N. E. 554; Sciolaro v. Asch, 137 App. Div. 667, 122 N. Y. S. 518.

The Supreme Court, in Watkins v. Sedberry, 261 U. S. 571, 43 S. Ct. 411, 67 L. Ed. 802, overruled objections to an allowance of compensation for services rendered upon an agreement whereby the attorney undertook to recover property belonging to the estate and indemnified the trustee against damages and expenses, and the trustee agreed that any property so recovered should be chargeable with the expenses incurred by the attorney, and the balance to be equally divided between them. The court said that the contract was not on its face unenforceable, was not malum in se, and that the attorney could recover on a quantum meruit. Indeed, it is found below that a substantial part of the services for which allowances were made were performed by the assignor of the plaintiff below. By this agreement the expenses to the estate were not increased, and the services inured to the benefit of the estate.

The case relied upon by the defendants below—Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 899—was an action for services by the plaintiff in the United States Treasury Department, which had designated him as spe-

cial counsel in prize cases, which restricted him to the selection of a man who was familiar with admiralty practice. Plaintiff entered into the contract with the defendant whereby, in consideration of his procuring the latter's appointment as special counsel, he agreed to pay the plaintiff one-half of the fees which he might receive from the government. This was properly held to be a breach of special duty, as well as of trust imposed in the plaintiff.

In Marsell v. Maires, 203 App. Div. 646, 196 N. Y. S. 739, affirmed 236 N. Y. 516, 142 N. E. 265, the terms of compensation were said to have been made by the attorneys for the bankrupt as a consideration for two things: (a) The election of trustees who would appoint the defendant their attorney; and (b) the defendant's appointment by them of such attorneys. This was held to be an illegal agreement.

And in Fried v. Danziger, 120 App. Div. 604, 105 N. Y. S. 44, the promise of compensation was by a firm of attorneys representing creditors in involuntary bankruptcy proceedings to divide fees with creditors, and the plaintiff claimed that he was entitled to his share of the fees received by the attorney and the number of creditors who were his clients. There the plaintiff had caused a petition in bankruptcy to be filed. The agreement provided for the discontinuance of the bankruptcy proceedings and the continuance of an action previously brought for the distribution of the bankrupt's assets. The agreement was held to be illegal.

[10] But it is argued that the agreement to divide the compensation awarded for the services of the defendants below is so vague and indefinite as to be unenforceable. Allowing Mr. Untermyer to determine what was fair and equitable did not make the agreement vague or indefinite. His judgment was to prevail, but it could not be arbitrary or capricious; it was to be fair and equitable. Such agreements are enforceable. Goltra v. Weeks, 271 U. S. 536, 46 S. Ct. 613, 70 L. Ed. 1074; Sweeney v. United States, 109 U. S. 618, 3 S. Ct. 344, 27 L. Ed. 1053; Ripley v. United States, 223 U. S. 695, 32 S. Ct. 352, 56 L. Ed. 614; Sullivan Co. v. Wingerath (C. C. A.) 203 F. 460; Robinson v. United States (C. C. A.) 251 F. 461. The compensation of the defendants below was fixed by the court, and the promise of the defendants below was to divide a fair and equitable share with Mr. Untermyer, as determined by him. He having acted and determined what was fair and reasonable, it was

sufficient upon which to base liability. No complaint is made that the division is capricious or arbitrary. Such an agreement was neither vague nor indefinite. Loudenback Fertilizer Co. v. Tennessee Phosphate Co. (C. C. A.) 121 F. 298, 61 L. R. A. 402; Klipstein v. Allen (C. C.) 123 F. 992; Jenkins v. Anaheim Sugar Co. (C. C. A.) 247 F. 958, L. R. A. 1918E, 293; Solter v. Leedom & Worrel Co. (C. C. A.) 252 F. 133; Burgess Fibre Co. v. Broomfield, 180 Mass. 283, 62 N. E. 367.

We think a legal and enforceable contract was pleaded and is established by the 'findings below. The judgment is therefore affirmed.

Judgment affirmed, with costs.